Filed 10/16/13  Nisevic v. City of Los Angeles CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SINISHA NISEVIC, | B244910 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC111319) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig D. Karlan, Judge.  Affirmed.

Carmen A. Trutanich, City Attorney, Timothy McWilliams, Supervising Attorney, and Peter E. Langsfeld, Deputy City Attorney, for Defendant and Appellant.

Law Offices of John E. Torbett, Jr., John E. Torbett, Jr.; Manatt, Phelps & Phillips, Michael M. Berger and Benjamin G. Shatz for Plaintiff and Respondent.

_____

Defendant City of Los Angeles appeals from the judgment of $5,053,548 entered in favor of plaintiff Sinisha Nisevic in an action for inverse condemnation based on damage caused when sewage backed up into Nisevic's property. The City's only contention on appeal is that the judgment is not supported by substantial evidence.[1] We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

The liability phase of this inverse condemnation action was tried to the court. The only issue at the liability phase of trial was causation of damages.

The parties entered into a stipulation to the following facts pertinent to liability. Nisevic owns a house at 1001 Main Street, Venice (the property), that was damaged by a sewer back up on August 4, 2010, caused by root intrusion in the City's sewer main. The house is connected to the sewer main in an alley behind the house. The City maintains the sewer main as a public improvement. Sewage damaged various parts of Nisevic's home-office.

Nisevic bought the property from William Meurer in 2009, after renting it for two years. After two sewage backups occurred while he owned the property, Meurer hired a plumber to install a backwater valve on the lateral line running from the house to the main sewer line in the alley. The valve, if functioning properly, would prevent sewage from passing back into the house in the event of a blockage. The plumber told Meurer that the sewer line in the alley behind the house was old and in disrepair. Installation of the backwater valve was the only work Meurer had done on the sewer system.

Sage Beagle, a licensed plumber with 23 years experience, performed a video inspection of the sewer line in May 2012. He observed a backwater valve in the lateral

---

[1] Nisevic contends the City has failed to present an adequate record on appeal. While we agree the record is problematic, for several reasons, we nevertheless resolve the appeal on the merits. Accordingly, we do not address whether the City has provided a record sufficient for review.

line on the property. The valve works by using a flap gate which prevents water from flowing from the alley into the house. However, it is possible for debris to become stuck under the flap, which would allow water to flow backward toward the house.

Nisevic did not take steps to alter the sewer system or remove the backwater valve. He was in Europe on August 4, 2010, when the damage occurred.

The City's only witness was Barry Berggren, a division manager of the City's wastewater collection system. Backwater valves are required on lateral connections to the main sewer line, installed by licensed plumbers with a permit. No permit could be found for the valve on the property, nor did it have the required vault built around the valve, which is designed to allow access for maintenance and cleaning.

According to Berggren, the sewage flow behind Nisevic's house is from north to south. City maps show the presence of a terminal maintenance hole in the alley behind the property, but none existed at the time of the damage. If the terminal had been in place and lower than the house, the sewage would have passed out the terminal into the alley, instead of going into the house. Sewage backs up to the lowest point of release if there is a blockage. The City reinstalled a terminal maintenance hole after the damage, but workers found no evidence of the original terminal. The alley was in poor condition, and whoever had performed repair work on the lateral line would have had to cold patch the alley with asphalt. Berggren believed the terminal was in place at one time because it is shown on the maps, although there are no as-built plans for this sewer. If there had been a terminal, he has no idea how it was removed or who removed it.

Berggren testified there are thousands of terminals routinely paved over when the City does road paving. He is not sure why a homeowner would cover the terminal and create a risk that sewage could back up into a house. Regular maintenance of sewers is performed by the City. The damage would not have happened had the tree roots not caused a blockage.

Nisevic testified in rebuttal that he saw William Garcia, survey chief for the City, working behind his house after the damage occurred. William Garcia said he was surveying the property, looking for a manhole that did not exist. William Garcia showed

3

Nisevic a map, indicating where the manhole should have been. The next week, Nisevic spoke with Enrique Garcia, a construction inspector for the City, as the alley was being dug up. He was told the pipe was broken and tilting the wrong way, causing the sewer to run uphill from his house. Enrique Garcia pointed out where the manhole should have been. He said the City occasionally paves over them and they could not locate it with a metal detector.

Peter Kraut, a professional engineer with expertise in the area of plumbing design, also testified as a rebuttal witness. The City's sewer line runs north to south behind the property. The property was at the end of the main line, so that it should have tilted downhill, away from the property, but it did not do so. A root blockage in the sewer downstream from the property caused a sewage back up and the resulting damage. The blockage was at an intersection in the line, so the sewage from 21 homes up the hill backed up to the lowest fixture in the area, which happened to be on the property. The pavement in the alley is lower than the fixtures in the house on the property, such as the shower drain or toilet.

Kraut believes the backwater valve failed as a result of the improper slope in the main line, which allowed solids to collect under the flap and sewage to flow into the house. This would not have occurred had the main line been tilted in the right direction. Kraut believed there had been a terminal maintenance structure behind the property at some time. The terminal shown on the City's maps at the adjacent property at 917 Main Street also was nonexistent. If the terminal structure behind the property were in place, the sewage would have spilled into the alley instead of flowing into the house. There is no reason an owner would remove the terminal, which would be detrimental to his system, costly to remove, and serve no purpose. The City is responsible for the main line, and there is no reason for a homeowner to change the main line. The asphalt patch behind the property is not over the lateral line; instead, the patch runs perpendicular to the lateral. When the City repaves a street, it is costly to raise or lower manholes, so they might be paved over for convenience.

## RULING OF THE TRIAL COURT

The trial court engaged in extensive colloquy with counsel before rendering its decision on liability.  The City conceded liability if the court found that the City changed the slope of the main sewer line or if it removed the terminal maintenance structure.  Since a homeowner had no reason to go to the expense of removing the terminal, the court reasoned it was more likely done by the City.  Additionally, there was no reason a plumber would alter the main sewer line.  It is more likely the City, rather than the homeowner, removed the terminal.  The court doubted the accuracy of the City maps, which showed the presence of two terminal maintenance structures in the area that did not exist.

## DISCUSSION

The City argues the ruling of the trial court on liability is not supported by substantial evidence.  According to the City, there is no evidence the City's sewer system was designed or constructed in the manner described at trial or that the City, or any of its contractors, damaged or removed a portion of the sewer system.  Also, there was no evidence that the City's maintenance program of the sewer system contributed to the conditions on the date of the injury to the property.  The City therefore contends Nisevic did not prove causation, an essential element of inverse condemnation.  We disagree.

### A.  Standard of review

When the sufficiency of the evidence is challenged on appeal, we review the record to determine if substantial evidence supports the determination of the trial court, and if so, the judgment must be affirmed.  (*Escamilla v. Deartment. of Corrections and Rehabilitation* (2006) 141 Cal.App.4th 498, 514-515 (*Escamilla*).  The substantial evidence rule requires this court to review the evidence in the light most favorable to the

prevailing party, giving it the benefit of all reasonable inferences and resolving all conflicts in its favor. (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660; *Escamilla*, *supra*, at p. 514.) We do not reweigh the evidence or attempt to evaluate the credibility of witnesses; those are functions delegated to the trial court. (*Escamilla*, *supra*, at pp. 514-515; *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630.)

## B.  The Elements of Inverse Condemnation

"'Article I, section 19 (formerly art. I, § 14) of the California Constitution requires that just compensation be paid when private property is taken or damaged for public use. Therefore, a public entity may be liable in an inverse condemnation action for any physical injury to real property proximately caused by a public improvement as deliberately designed and constructed, whether or not that injury was foreseeable, and in the absence of fault by the public entity. [Citations.]' (*Souza v. Silver Development Co.* (1985) 164 Cal.App.3d 165, 170.)" (*Marshall v. Department of Water & Power* (1990) 219 Cal.App.3d 1124, 1138.) Negligence in design or construction is not an element of inverse condemnation, but causation of damage must be established. "It is not necessary that government's liability be based on negligence as long as there is a causal relationship between government's act or omission and the loss. (*Travelers Indem. Co. v. Ingebretsen* (1974) 38 Cal.App.3d 858, 864.)" (*Aetna Life & Casualty Co. v. City of Los Angeles* (1985) 170 Cal.App.3d 865, 873-874.)

In determining the existence of proximate causation for inverse condemnation, the plaintiff must prove a substantial cause and effect relationship which excludes the probability that other forces alone caused the injury. (*Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 559 (*Belair*); *California State Automobile Assn. Inter-Insurance Bureau v. City of Palo Alto* (2006) 138 Cal.App.4th 474, 481 (*City of Palo Alto*).) "Even where an independent force contributes to the injury, the public improvement remains a substantial concurrent cause if 'the injury occurred in substantial part because the improvement failed to function as it was intended.' ([*Belair*, *supra*,] at

6

pp. 559-560.)  The public improvement is a substantial cause unless 'the damage would have occurred even if the project had operated perfectly.'  (*Id.* at p. 560.)  A public improvement is a 'substantial concurring cause' if other forces alone would not have caused the damage and the public improvement failed to function as intended.  (*Ibid.*)" (*City of Palo Alto*, *supra*, at p. 481.)

## C.  Analysis

Under the applicable standard of review, the City's challenge to the sufficiency of the evidence of causation is without merit.  Contrary to suggestions in the City's brief that the trial court's ruling was based on imagination, hunch, and a guesstimate, the record demonstrates the court was fully engaged in the fact finding process, questioning witnesses for both parties in an effort to resolve disputed factual issues, and reached a thoughtful conclusion amply supported by the evidence.

Viewed in the light most favorable to Nisevic, the record contains substantial evidence that property damage was caused when sewage backed up as the result of a root blockage in the City's sewer main.  There was evidence a terminal maintenance hole that was supposed to be behind the property did not exist, which resulted in sewage flowing into the property instead of into the alley.  There was no evidence a property owner had removed the terminal, nor was there any reason an owner would have done so.  Another terminal shown on the City's maps in the same area was also inexplicably missing.  On the other hand, there was substantial evidence that the terminals are sometimes paved over by the City or its contractors.  Finally, there was evidence the sewer main behind the property was tilted at an improper angle, that allowed sewage to move into the lateral line on the property, rather than flow downhill.  Kraut testified that this improper tilt could cause solid material to get under the flap on the backwater valve, resulting in a malfunction that allowed sewage to pass in the direction of the home.  The trial court reasonably concluded there was no evidence the property owner altered the main sewer line to create the improper tilt.

The record therefore contains substantial evidence that the sewer failed to function as intended and the system had been altered by the City, which caused damage to the property. The City's evidence that the backwater valve failed does not negate liability, as it establishes only that there was arguably more than one factor that caused damage to the property. This does not negate liability. (*City of Palo Alto, supra,* 138 Cal.App.4th at p. 483 ["by finding that the blockage occurred in the main, and the blockage caused sewage to back up into the [plaintiffs'] home, the trial court impliedly found that the public improvement failed to function as intended . . . [and] the City should be liable under inverse condemnation"].)

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to plaintiff Sinisha Nisevic.


KRIEGLER, J.


We concur:


TURNER, P. J.


MOSK, J.

8